IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| BRYAN ARVIDSON,<br><br>Plaintiff,<br><br>vs.<br><br>CAPTAIN BRAD BRAGG, LEO DUTTON, JESSE RANDOLPH, MATTHEW BOURGEAU, TROY CHRISTENSEN, and LEWIS AND CLARK COUNTY,<br><br>Defendants. | CV 23–12–H–BMM-KLD<br><br><br>ORDER |

Plaintiff Bryan Arvidson, a state prisoner proceeding without counsel, challenges the purported denial of care and conditions of his confinement while he was incarcerated at the Lewis and Clark County Detention Center in Helena, Montana, from October 2, 2021, to September 19, 2022. (*See* Doc. 13.) Defendants seek summary judgment on the grounds that no constitutional violation occurred and, alternatively, that Arvidson failed to exhaust his administrative remedies. Several Defendants also assert that they are entitled to qualified immunity. *See e.g.*, (Docs. 27 & 32.)

The undisputed facts show that Arvidson failed to administratively exhaust his claims and that the Defendants were not deliberately indifferent to his needs.

1

The Court will grant Defendants' motion for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it impacts the outcome of the case in accordance with governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Tatum v. Moody*, 768 F.3d 806, 814 (9th Cir. 2014). Nonetheless, the nonmoving party must identify, with some reasonable particularity, the evidence that it believes precludes summary judgment. *See Soto v. Sweetman*, 882 F.3d 865, 870 (9th Cir. 2018) (explaining that while pro se parties are exempted from "*strict* compliance with the summary judgment rules," they are "not exempt[ed] . . . from *all* compliance," such as the requirement to identify or submit competent evidence in support of their claims). Defendants properly accompanied their motion with the requisite *Rand* Notice. (*See* Doc. 26.) Arvidson responded to the motion, (*see* Doc. 31). Arvidson failed to comply with Fed. R. Civ. P. 56 and L.R. 56.1, when he filed no Statement of Disputed Facts.

## BACKGROUND

The following facts are undisputed unless otherwise noted, and viewed in the light most favorable to Arvidson, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (*per curiam*).

## I.     Factual Background

Arvidson was arrested and charged with various criminal offenses on October 1, 2021. (Doc. 25-1 at 1.) Arvidson was incarcerated at the Lewis and Clark County Detention Center ("LCCDC") from October 2, 2021, to September 19, 2022, until his transfer to Montana State Prison. Montana's First Judicial District Court, Lewis and Clark County, conducted a jury trial on April 7, 2022. The jury found Arvidson guilty of attempted deliberate homicide, criminal endangerment, obstructing a peace officer, and tampering with or fabricating physical evidence. (Doc. 25-2.)

LCCDC has a multi-step grievance process for inmates to raise and grieve matters related to policy, treatment, and conditions at the facility. (Doc. 25-15 at 2-3.) All inmates must submit grievances electronically on tablets provided to inmates or via the facility's KIOSK. (*Id*. at 2.) In the event that the electronic systems are not functioning, an inmate may submit a handwritten complaint on a grievance form and hand it to detention staff. (*Id*. at 3.) An assigned officer investigates lodged grievances and renders a decision.

An inmate may appeal the decision to a detention sergeant. (*Id*.) If the

inmate is still not satisfied, an appeal may be made to the Detention Lieutenant and then to the Detention Captain. The Detention Captain's decision is final. (*Id*.) Inmates are required to raise complaints as outlined in the grievance procedure and must exhaust all remedies prior to seeking judicial action. (*Id*.) Arvidson followed this procedure to lodge various general and medical grievances while incarcerated at LCCDC. *See generally*, (Doc. 25-14.)

Defendant Bradley Bragg, the LCCDC Administrator overseeing daily operations of the facility in June of 2022, ordered a search of all pods. Defendant Bragg directed officers, including Defendant Randolph and Defendant Borgeau, to seize recovered contraband. (Doc. 25-5 at 1-2.) Included within the items officers were looking for were "fishing lines." Inmates make these "fishing lines" by tying together thin, ripped strips of fabric. Inmates use "fishing lines" to pass items to other inmates. (*Id*. at 2.) Inmates attach items to the "fishing line" along with another item to provide weight. The inmates toss the line through cracks or under doors. (*Id*.); *see also*, Aff. of Randolph (Doc. 25-16.)

Arvidson attempted suicide by hanging himself from a handmade noose off the second level of the LCCDC on August 24, 2022. (Doc. 25-4 at 3:22-24); *see also*, 8/24/22 Report (Doc. 25-6.) Arvidson was transported to the hospital for treatment and further observation. (Doc. 25-9.) The hospital released Arvidson the following day.

Arvidson advised Defendant Bragg following his suicide attempt that an officer previously had found "ropes" in his cell. (Doc. 25-5 at 2, ¶ 7.) Defendant Bragg investigated the allegation. Defendant Bragg learned that Defendant Randolph had seized a "fishing line" from Arvidson's cell during the June 2022 search for contraband. (*Id*. at ¶ 8.) The investigation revealed no rope or noose recovered from Arvidson's cell during the search by LCCDC officers. (*Id*. at ¶ 9.) Similarly, the investigation did not reveal that any LCCDC officers knew that Arvidson had been experiencing suicidal ideations or had been contemplating attempting suicide. (*Id*. at 3, ¶ 10.); *see also*, Aff. Randolph (Doc. 25-16 at 2, ¶¶ 8-10.)

Defendant Troy Christensen, the Lieutenant of Lewis and Clark County Sheriff's Office who assists in overseeing the daily operations of the LCCDC, met with LCCDC mental health staff, nursing staff, and command staff, following Arvidson's suicide attempt. (Doc. 25-11 at 1-2.) The group collectively decided to keep Arvidson on suicide watch on the booking floor of LCCDC, until his transport to Montana State Prison. (*Id*. at 2, ¶ 4.) The Detention Center provides inmates 1 to 2 hours each day outside their cell while on suicide watch. Inmates may watch television, use the phone, shower, and or use the KIOSK during this time outside their cells. (*Id*. at 2, ¶¶ 4-6.) Arvidson refused to leave his cell on some of the days that Arvidson spent on suicide watch. Detention Center officers

left Arvidson's cell door open for the allotted 1 to 2 hours. (*Id*. at ¶ 7); *see also*, Inmate Watch Sheets (Doc. 25-13.)

Arvidson acknowledged that he never reported to any LCCDC staff that he was suicidal. (Doc. 25-4 at 3:1-3; 4:16-18.) Similarly, Arvidson admitted that he refused to meet with mental health professionals at LCCDC when he was scheduled. (Doc. 25-4 at 5:10-12; 6:8-23.) Arvidson did not appeal any grievance concerning officers allegedly finding ropes in his cell, his suicide attempt, or being placed on mental health watch following his suicide attempt. (Doc. 25-5 at 3, ¶ 13.)

The Montana state district court sentenced Arvidson On September 19, 2022, to forty years at the Montana State Prison. The Detention Center transferred to the Montana State Prison that same day.

## II. Procedural Background

Arvidson filed the operative complaint in this Court on February 15, 2023. Arvidson alleges that LCCDC violated his right to be free from cruel and unusual punishment and failed to provide adequate mental health care. (*See* Doc. 2.) Arvidson alleges in his Amended Complaint that Defendants violated his Fourteenth Amendment rights by failing to provide adequate mental health care and engaged in cruel and unusual punishment by keeping him locked in a cell for days, without letting him out. (Doc. 13.) The undisputed record defeats

6

Arvidson's claims.

## ANALYSIS

Defendants assert that they are entitled to summary judgment on the grounds that no constitutional violation occurred and that even if he did not, Arvidson failed to administratively exhaust his claims. Defendants also assert qualified immunity. The undisputed record shows Defendants were not deliberately indifferent to Arvidson's needs. Nevertheless, because Arvidson must have properly exhausted his claims to proceed here, *Jones v. Bock*, 549 U.S. 199, 216 (2007), the Court first addresses Defendants' exhaustion argument.

### I.     Exhaustion

The Prison Litigation Reform Act ("PLRA") prohibits any prisoner from suing over prison conditions until he has first exhausted available administrative remedies by completing a correctional facility's administrative review process according to its rules. *See* 42 U.S.C. § 1997e(a). A defendant must prove the inmate's failure to exhaust by showing "there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). "[O]nce the defendant has carried that burden, the prisoner has the burden of production." *Id.* "That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative

7

remedies effectively unavailable to him." *Id.*

Arvidson does not claim that he failed to receive a copy of the Lewis and Clark County Detention Center's grievance policy or that he did not understand the procedure. As set forth above, the grievance policy requires that a grievance be submitted into the "KIOSK system" within 48 hours and then the process contains the following steps: an information investigation, appeal to Detention Sergeant, appeal to Detention Lieutenant, and a final appeal to the Detention Captain. (Doc. 25-15 at 2-3.) The record shows that Arvidson regularly submitted general grievances and requests for medical care through the KIOSK system. (*See* Doc. 25-14.) No records show that Arvidson appealed any action, inaction, or decision, as required in the above procedure, relative to the claims at issue in this proceeding. Arvidson does not address the exhaustion issue in his response to Defendants' summary judgment motion. Arvidson instead simply states that he was "unaware" he needed to file a grievance relative to LCCDC staff's purported "failure to act." (Doc. 31 at 4-5.) This claim proves insufficient to exhaust under the Detention Center's administrative appeals process. Arvidson's claims are not properly before the Court.

## II. Eighth Amendment: Suicide Attempt & Conditions of Confinement

The Court will address the merits of Arvidson's claims despite his failure to exhaust his administrative remedies. Arvidson was a pretrial detainee for a portion

8

of his incarceration at LCCDC. Arvidson became a convicted prisoner following his jury trial on April 7, 2022. All the claims put forth in Arvidson's complaint surrounding the "ropes" found in his cell and the alleged corresponding failure of LCCDC staff to act leading up to his suicide attempt, along with the conditions of his confinement while on suicide watch occurred while he was a convicted prisoner. The Eighth Amendment applies.

The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids prison officials from "the unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). A plaintiff must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs to prove a § 1983 claim for violation of the Eighth Amendment based on inadequate medical/mental health care." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Arvidson must show both that his needs were objectively serious, and that Defendant possessed a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 299 (1991); *McKinney v. Anderson*, 959 F.2d 853, 854 (9th Cir. 1992) (on remand). The requisite state of mind is known as "deliberate indifference." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). Defendants acknowledge that a heightened suicide risk or an attempted suicide constitutes a serious medical need. *See*, (Doc. 27 at 22-23) (citing *Conn v. City of Reno*, 591 F. 3d 1081, 1095 (9th Cir. 2010).

Once there is a showing a serious medical need, the Court must examine whether Defendants' response was deliberately indifferent to the need. In *Farmer v. Brennan*, 511 U.S. 825 (1994), the U.S. Supreme Court established a demanding standard for "deliberate indifference." Negligence is insufficient. *Farmer*, 511 U.S. at 835. "Even gross negligence is insufficient to establish deliberate indifference." *Edmo v. Corizon, Inc.*, 949 F. 3d 489, 495 (9th Cir. 2020). Deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal citation omitted). Deliberate indifference is shown when a prison official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 847; *see also Gibson v. County of Washoe, Nevada*, 290 F. 3d 1175, 1187 (9th Cir. 2002).

A defendant must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he or she "must also draw the inference." *Farmer*, 511 U.S. at 837. "If a [detention officer] should have been aware of the risk, but was not, then the [officer] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F. 3d at 1188. This "subjective approach" focuses only "on what a defendant's mental attitude actually was." *Farmer*, 511 U.S. at 839; *see also Disability Rights Montana, Inc.*

10

*v. Batista*, 930 F. 3d 1090, 1101 (9th Cir. 2019) The Ninth Circuit described the standard for meeting the deliberate indifference prong, "as *Farmer* makes clear, is shown adequately when a prison official is aware of the facts from which an inference could be drawn about the outstanding risk, and the facts permit us to infer that the prison official in fact drew that inference, but then consciously avoided taking appropriate actions." *Disability Rights Montana, Inc.*, 930 F. 3d at 1101. Whether a defendant possessed subjective knowledge is a factual question that is "subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842.

In the instant case, however, the Court need not look to circumstantial evidence to determine whether Defendants possessed subjective knowledge of the suicide risk presented by Arvidson. Arvidson admitted in his deposition that he never reported suicidal ideations or intent to any LCCDC staff, including a named Defendant. *See*, (Doc. 25-4 at 3-4.) Arvidson acknowledged that he refused to meet with mental health professionals on several occasions when he had been scheduled. (Doc. 25-4 at 5-6.) The undisputed record shows Defendants were not subjectively aware, or able to draw an inference, that there was an imminent and substantial risk of serious harm to Arvidson.

Arvidson points to the "rope" that officers discovered in his cell in June 2022. The Detention Center's investigation into this allegation revealed that the

item was a "fishing line," common contraband used by inmates to pass items from cell to cell. Officers did not recover any items from Arvidson's cell in June 2022, comparable to the rope and noose that he used in his August 2022 suicide attempt. *See e.g.*, (Doc. 25-7.) Or put another way, the "fishing line" recovered from Arvidson's cell, an item common to LCCDC inmates generally, did not present evidence that Arvidson was in a substantial danger of attempting suicide two months later. Accordingly, there can be no showing that Defendants disregarded an unknown risk. The record instead shows that Defendants were not aware of a risk of serious harm to Arvidson. No corresponding Eighth Amendment violation occurred. *Gibson*, 290 F. 3d at 1188.

Arvidson also fails to present a genuine issue of dispute relative to his placement on suicide watch at LCCDC. The treatment a prisoner receives while incarcerated and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Prison conditions may be restrictive- even harsh- without violating the Eighth Amendment. Prison officials must provide prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

A prison official violates the Eighth Amendment when (1) "the deprivation

was serious enough to constitute cruel and unusual punishment" and (2) "the defendant acted with 'deliberate indifference.'" *Snow v. McDaniel*, 681 F. 3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F. 3d 1076 (9th Cir. 2014)(en banc). In relation to the first objective prong of the analysis, "not every governmental action affecting the interests or well-being of a prisoner is subject to Eight Amendment scrutiny." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Rather the deprivation alleged must be objectively sufficiently harmful or sufficiently "grave" or "serious." *Wilson*, 501 U.S. at 298. Under the second prong "deliberate indifference entails something more than negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley*, 475 U.S. at 319.

  The undisputed facts demonstrate that Arvidson was not subject to a harmful deprivation under the first objective prong of the test and that Defendants were not deliberately indifferent to Arvidson's needs. Arvidson initially alleged that he was locked in booking/on suicide watch for the duration of his confinement at LCCDC. Arvidson acknowledged in his deposition that this claim was a misstatement. (*See* Doc. 25-4 at 2:15-23.) Arvidson apparently challenges his detention pursuant to the

"suicide watch" put in place from August 25, 2022, following his suicide attempt, until his transfer from LCCDC to Montana State Prison on September 19, 2022. *See e.g.*, (Doc. 31 at 3); *see also*, (Doc. 25-3). Arvidson spent 25 days on suicide watch. It was objectively reasonable for Defendants to place Arvidson on suicide watch after Arvidson had attempted suicide and he was awaiting sentencing for several serious felonies. Had Defendants failed to take these steps, given these circumstances, Defendants risked having acted with deliberate indifference to a suicide risk.

The record contradicts Arvidson's claim that the Detention Center held him in his cell for days without being let out. *See* (Doc. 31 at 7.) The Detention Center allowed Arvidson 1 to 2 hours of time outside his cell each day while on suicide watch. *See*, Christensen Aff. (Doc. 25-11 at ¶¶ 5-6.) Despite the fact Arvidson chose not to leave his cell that on some days, Detention Center officers left the door was left open to allow him the opportunity. (*Id*. at ¶ 7.) The Inmate Watch sheets corresponding to Arvidson's time in suicide watch confirmed this fact. *See*, (Doc. 25-13.) Arvidson was free to watch television, use the telephone, shower, or utilize the KIOSK. The undisputed record shows that there was no serious deprivation to Arvidson as a result of his placement on suicide watch or that Arvidson suffered any attendant harm.

14

The staff at the Lewis and Clark Detention Center provided constitutionally adequate care to Arvidson and were not deliberately indifferent to Arvidson's needs. The Court will consider whether Defendants are entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (explaining that if the defendant's conduct did not violate a constitutional right, further analysis is unnecessary).

## CONCLUSION

Based on the foregoing, **IT IS ORDERED** that Defendants' motion for summary judgment (Doc. 24) is **GRANTED**.

The Clerk of Court is directed to close this matter and enter judgment in favor of Defendants pursuant to Rule 58 of the Federal Rules of Civil Procedure.

The Clerk of Court is additionally directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith. No reasonable person could suppose an appeal would have merit.

DATED this 14th day of March, 2025.

_____
Brian Morris, Chief District Judge
United States District Court